IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL'S FABRICS, LLC,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:24-cv-01585-JRR |
| **DONEGAL MUTUAL INSURANCE COMPANY,** | |
| *Defendant*. | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Donegal Mutual Insurance Company's two motions to exclude Plaintiff Michael's Fabric's LLC's expert witnesses: the Motion to Exclude Testimony of David Chadick (ECF No. 75; the "Chadick Motion"), and the Motion to Exclude Testimony of Will Funderburke (ECF No. 76; the "Funderburke Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025); *see Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, No. CV JKB-17-00252, 2019 WL 2524916, at *1 n.1 (D. Md. June 19, 2019) (recognizing that "[a] hearing is not required under Federal Rule of Evidence 702"). For the reasons that follow, the Motions will be denied.

This action arises from Plaintiff's claim for loss of its inventory of high-end fabrics caused by water damage that was submitted under its insurance policy with Defendant. (ECF No. 3 ¶ 8.) Ultimately, Plaintiff contends "Defendant has intentionally, maliciously and wrongfully denied the claim by Michael's for replacement value of the inventory." *Id.* ¶ 9. Defendant seeks to exclude the testimony of two expert witnesses disclosed in Plaintiffs' Rule 26(a)(2) Disclosures— David Chadick, to "testify regarding the valuation of the damaged fabric," and William Funderburke, to "testify regarding the economic loss sustained by Michael's Fabrics." (ECF No.

83-3.) Defendant seeks to exclude Chadick's testimony as not reliable pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993). (ECF No. 75.) It seeks to exclude Funderburke's testimony because Plaintiff failed to identify him (or, more specifically, his employer) in a Local Rule 103.3 disclosure statement. (ECF No. 76.)

I.  **The Chadick Motion**

As discussed above, Defendant first moves to exclude Chadick's testimony under Rule 702, urging that his opinion is not based on sufficient facts and is the product of an "antithesis of a reliable methodology."[1] (ECF No. 75-1 at pp. 2–6.) Defendant's argument focuses primarily on the following facts:

> Chadick never looked at the damaged fabrics to determine the age, condition, thread counts, labels, roll marks, or manufacturer marks. Chadick stated that he never reviewed [Plaintiff's owner's] retail prices listed by Michael's Fabrics for its inventory of fabrics at the time of the water loss. Chadick never reviewed any data from any of the fabric manufacturers to see what they charged for the fabrics. According to Chadick, he didn't need to do any of the research normally done to determine the value or replacement costs of clothing fabrics, because he just knew the value of each.

(ECF No. 75-1 at pp. 2–3.)[2]

---

[1] Defendant's reply also reiterates its position raised in its summary judgment briefing that Plaintiff submitted fraudulent invoices in support of its claim, seemingly suggesting that Chadick's opinion relying upon their submission of their list of fabrics is thus unreliable. To the extent it asserts same, Defendant's argument goes to the weight, not the admissibility, of Chadick's testimony. To the extent it seeks to challenge the data upon which Chadick opined, Defendant is free to offer its own analysis of the damaged fabrics and expert testimony as to same, and may challenge Chadick under cross-examination. *See Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 801 (D. Md. 2022) (discussing "'traditional and appropriate means' of challenging expert testimony" as "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof") (quoting *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 714 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018)).

[2] While the court will consider the facts as asserted, it nonetheless must remark that Defendant has failed to provide any (accurate) citation to any record evidence to support its assertion of these facts. (ECF No. 75.) Instead, it offers a series of emails that do not address the facts asserted (ECF Nos. 3–5), and a portion of his Chadick's deposition transcript in which he lays out his experience and the process by which he was contacted to serve as an expert witness. (ECF No. 75-2.) Until its reply, Defendant failed to provide records that support several of its chief contentions.

Moreover, Defendant lodges many assertions in the absence of supportive evidence, citation, or explanatory context, which are patently untrue. For instance, Defendant cite's Chadick's deposition to assert: "Chadick concluded that he wanted to help Goodman because he was so 'sweet' and 'cute.'" (ECF No. 75 ¶ 2.) Defendant did not attach that page of the deposition transcript; on independent review by the court, the transcript does not show Chadick referring to

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.  Simply put, it "permits expert testimony if that testimony is (1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) 'based on sufficient facts or data,' (3) 'the product of reliable principles and methods,' and (4) the product of a 'reliabl[e] appli[cation] of th[ose] principles and methods to the facts of the case.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. Trial judges are the "'gatekeepers of expert testimony' to protect the judicial process from 'the potential pitfalls of junk science.'" *Sardis*, 10 F.4th at 275 (quoting *United States v. Bonner*, 648 F.3d 209, 215 (4th Cir. 2011)).  This gatekeeping function "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Ultimately, the court's gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal

---

Goodman as "cute," but instead provides as follows: "And I really wanted to help him because he was super sweet and super nice and he reminded me a lot of my father."  (ECF No. 85-9 at 11:17–19.)

experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

"Relevant evidence . . . is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 591). Reliability, in turn, "is a 'flexible' inquiry that focuses on 'the principles and methodology' employed by the expert." *Sardis*, 10 F.4th at 281 (quoting *Daubert*, 509 U.S. at 594–95). The guideposts of the court's reliability inquiry include: (1) "whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error" in the "expert's theory or technique" and (4) "whether the expert's methodology is generally accepted in his field of expertise." *Daubert*, 509 U.S. at 593; *Sardis,* 10 F.4th at 281. District courts have "broad latitude" in the decision of "*how* to determine reliability" and the "ultimate reliability determination;" thus, all factors may not be applicable in every case. *Kumho Tire Co.*, 526 U.S. at 141–42.

"The proponent of the expert testimony bears the burden of establishing its admissibility, that is, 'the burden of coming forward with evidence from which the trial court could determine that the evidence is admissible under *Daubert*.'" *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020) (quoting *Main St. Am. Grp. v. Sears, Roebuck, & Co.*, No. JFM-08-3292, 2010 WL 956178, at *3 (D. Md. Mar. 11, 2010)).

It is helpful here first to identify what Defendant does not appear to challenge. While Defendant certainly throws barbs at Chadick's lack of expert witness experience, it does not argue that Chadick lacks the requisite "knowledge, skill, experience, training, or education" to serve as an expert witness. (ECF No. 75-1.) It further does not dispute that Chadick's testimony is relevant

or that his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Indeed, Chadick's sworn statement affirms that he "[has] been in the fabric business for almost [his] entire life," working for Rosen & Chadick, his father's company, from 1983 through 2019, and his own company, David Chadick Fabrics and the Chadick Collection, from 2020 through the present. (ECF No. 83-3 ¶¶ 1–3, 8.) For nearly 30 years, he was "the primary purchaser of all fabrics for Rosen & Chadick." *Id.* ¶ 7. He has also provided fabric for myriad purchasers, including Broadway productions, Ralph Lauren stores and fashion shows, as well as a number of stores and hotels throughout New York City. *Id.* ¶¶ 6, 9–10. Chadick also earned his degree in fashion merchandising in 1983 and is a member of a number of professional organizations concerning fabrics. *Id.* ¶ 11, p. 8. On the basis of that education and professional experience, he opined on the valuation of the damaged fabrics. *Id.* ¶ 14–16.

Defendant's challenge, instead, goes to the reliability of Chadick's methodology and resulting opinion. Chadick valued the damaged fabrics after reviewing the list of fabrics provided by Plaintiff, which "contained a detailed description of the fabric, including the type of fabric, the country of origin, the designer of the fabric[,] and the yardage of the fabric." (ECF No. 83-3 ¶¶ 13–16.) Upon consideration of those factors, he priced the wholesale cost of the fabric based on his education and professional experience in valuing and purchasing fabrics. *Id.* ¶¶ 15–17.

Defendant's criticism of Chadick's methodology (or, rather, what he did not consider) is, on the whole, not compelling. For instance, Plaintiff's retail prices for the fabric inventory are not data that bear heavily on Chadick's determination of value; indeed, retail pricing does not appear incredibly relevant, in the common meaning of the word, to the determination of the wholesale or replacement cost of the damaged inventory. And while the court can imagine some potential benefit of physically examining the damaged fabrics, the court is not persuaded that failure to look

at or examine the damaged fabric undermines Chadick's opinion, including his methodology and other foundational tenets. Again, there would appear to be scant value in reviewing thousands of yards of damaged fabric to opine on the value of that fabric in an undamaged state. As Chadick testified, "there was no need for me to see the rolls of fabrics because I know what every fabric is on the description with my knowledge of doing this for 41 years." (ECF No. 85-9 at 14:18–21.) Defendant certainly can cross-examine on this point, but it is not a basis for exclusion.

The court is further satisfied that Chadick's proffered opinion, grounded in his education and professional experience, is based on and subject to the "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court is persuaded that Chadick's methodology used to reach his opinion is based on sufficient data and sound principles from which he extrapolated his conclusions, as opposed to merely "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Chadick reached his opinion on value after considering detailed descriptions of the fabrics at issue against the backdrop of his deep knowledge acquired over four decades in the relevant industry. This case is not like *Davis v. Carroll*, cited by Defendant, where the expert failed to comply with a known professional standard. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 415 (S.D.N.Y. 2013).

"[Q]uestions regarding the factual underpinnings of the [expert witness'] opinion," which are what Defendant raises here, "'affect the weight and credibility' of the witness' assessment, 'not its admissibility.'" *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008)); *see Sommerville v. Union Carbide Corp.*, — F.4th — , No. 24-1491, 2025 WL 2383496, at *12 n.7 (4th Cir. Aug. 18, 2025) (explaining same and "underscore[ing] that a district court may not exclude expert testimony based on (1) its *mere disagreement* with an expert's choice of data or (2) its *own* assessment of the correctness of an expert's opinions" (emphasis in original)).  Thus, Defendant's challenges are more properly addressed by "the 'traditional and appropriate means' of challenging expert testimony"—"vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 801 (D. Md. 2022) (quoting *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 714 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018)).

Based on the foregoing, the court will deny the Chadick Motion.

## II.     The Funderburke Motion

Unlike Defendant's Chadick Motion, the Funderburke Motion does not seek exclusion under Federal Rule of Evidence 702, but instead for non-compliance with Local Rule 103.3 due to Funderburke and his employer's purported financial interest in the outcome of the claim.  (ECF No. 76.)  The court is unpersuaded.

The nature of the relationship is as follows: On January 23, 2023, shortly after the loss at issue in this action, Plaintiff entered into a Public Adjuster Contract with Goodman-Gable-Gould ("GGG"), in which it agreed to pay GGG 10% "of the gross amounts adjusted or otherwise recovered as a result of the losses and/or damages sustained." (ECF No. 76-2.)  GGG is owned

7

by Molecular Holdings. (ECF No. 84-4 at 18:11–14.) Funderburke is employed by Rollins Accounting and Inventory Services ("Rollins"). (ECF No. 84-3 ¶ 3.) Rollins is also owned by Molecular Holdings. (ECF No. 84-4 at 18:11–14.) Defendant contends that common ownership of GGG and Rollins means that "Funderburke and his employer have a financial interest in the outcome of the claim" that ought to have been disclosed in Plaintiff's Local Rule 103.3 disclosure statement.[3] (ECF No. 76 ¶ 9.) Because it was not, Defendant urges, Funderburke should be excluded as a witness.[4]

Local Rule 103.3 provides:

> When filing an initial pleading, motion or other paper that initiates a civil action, including the removal of a state action, or promptly after learning of the information to be disclosed, counsel shall file a statement (separate from any pleading, motion, or other paper) containing the following information.
>
> a) Corporate Affiliation
> The identity of any parent or other affiliate of a corporate party and the description of the relationship between the party and such affiliates. The identity of all members of any party that is a business entity established under state law, other than a corporation; and in cases based on diversity jurisdiction, the state of citizenship of each member.
>
> b) Financial Interests in the Outcome of the Litigation
> The identity of any corporation, unincorporated association, partnership, or other business entity, not a party to the case, which may have any financial interest whatsoever in the outcome of the litigation, and the nature of its financial interest. The term "financial interest in the outcome of the litigation" includes a potential obligation of an insurance company or other person to represent or to indemnify any party to the case. . . .

---

[3] Defendant also cites MD. CODE ANN., CTS. & JUD. PROC. 3-2C-01, which pertains to qualified experts in the context of malpractice claims against licensed professionals. This statute does not appear to be applicable here in Plaintiff's suit against his insurer.

[4] To the extent Defendant seeks to exclude Funderburke as an expert on grounds of a violation of Code of Ethics for Forensic CPAs (ECF No. 76 ¶ 9), it has failed to advance argument in support thereof and fails to set forth the text of the rule with which Defendant avers he has not complied. Therefore, the filed court declines to consider the issue.

Local Rule 103.3 (D. Md. 2025).

Local Rule 103.3 requirement serves administrative purposes, including aiding the court in consideration of its jurisdiction, *see Aqua Acceptance, LLC v. Pelican Grp. Consulting, Inc.*, No. CV ELH-20-2802, 2021 WL 3418833, at *4 (D. Md. Aug. 4, 2021), and facilitating "compliance with the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges," *see Bluebell Bus. Ltd. v. Jones*, No. CV RDB 17-2150, 2018 WL 3740694, at *15 n.19 (D. Md. Aug. 7, 2018) (quoting FED. R. CIV. P. 7.1).  Defendant offers no legal support for the draconian result it seeks; and the court finds no legal support for Defendant's contention that purported non-compliance with Local Rule 103.3 serves as a basis for disqualifying an expert witness.  Moreover, assuming without finding that Plaintiff has not complied with the rule by its non-disclosure of Funderburke, the error and impact is *de minimis* in nature, and the court disagrees that such non-compliance calls for exclusion of Funderburke's testimony.  Defendant remains free to seek to cross-examine on bias, subject to the court's ruling on any evidentiary objection brought by Plaintiff, if any.  *Cf. Glass v. Anne Arundel Cnty.*, 38 F. Supp. 3d 705, 715 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018) ("[A]n expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination." (quoting *See Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers,* CIV.A. 3:11–0149, 2012 WL 8503238, at *1 (S.D.W. Va. May 3, 2012)); *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 n.3 (D. Md. 2017) (same); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 515 (D. Md. 2012) ("Alleged bias is ordinarily a question of credibility, not admissibility.").

For the foregoing reasons, the court will deny Defendant's Funderburke Motion.[5]

---

[5] Defendant does not move for Plaintiff to amend its Local Rule 103.3, and the court does not discern, on the facts before it, that amendment is necessary here.  It thus declines to order same at this time.

### III.  ORDER

For the reasons set forth herein, it is this 11th day of September 2025,

**ORDERED** that Defendant's Chadick Motion (ECF No. 75) and Funderburke Motion (ECF No. 76) shall be, and are hereby, **DENIED**.

/S/
_____
Julie R. Rubin
United States District Judge