IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL'S FABRICS,

       *Plaintiff*,

    v.

DONEGAL MUTUAL INSURANCE
COMPANY,

       *Defendant*.

Civil No.: 1:24-cv-01585-JRR

## <u>MEMORANDUM OPINION</u>

Pending before the court is Defendant Donegal Mutual Insurance Company's Motion for Summary Judgment. (ECF No. 74; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be denied.

## I.  DISPUTED AND UNDISPUTED FACTS

Plaintiff operates a business at 6324 Falls Road in Baltimore, Maryland, that buys and sells high-end fabrics. (ECF No. 3 ¶ 1.) Lee Jonathan Miller is Plaintiff's owner and operator. *Id.* ¶ 31. This action arises from an insurance policy between Defendant (the insurer) and Plaintiff (the insured) for Plaintiff's business premises. (ECF No. 74-26; the "Policy.")[1] Relevant here, the Policy covered the period from December 16, 2022, to December 16, 2023. *Id.* at p. 6. Plaintiff paid an annual premium of $4,765.00, $3,364.00 of which constituted the premium for replacement cost of property coverage. *Id.* at pp. 6–7.

---

[1] Unless stated otherwise, the court's reference to page number refers to the CM/ECF pagination.

Two Policy provisions are at issue in the Motion. First, the Policy's Businessowners Commons Policy Conditions' Concealment, Misrepresentation, or Fraud Provision, which provides:

> C. Concealment, Misrepresentation Or Fraud
> This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This policy;
> 2. The Covered Property;
> 3. Your Interest in the Covered Property; or
> 4. A claim under this policy

*Id.* at p. 133 (the "Concealment, Misrepresentation, or Fraud Provision").

Second, the Policy's Businessowners Special Property Coverage Form's Duties in the Event of Loss or Damage Provision, which provides:

> 3. Duties in the Event Of Loss Or Damage
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> .          .          .
>
> (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
>
> .          .          .
>
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim.
>
> .          .          .
>
> (8) Cooperate with us in the investigation or settlement of the claim.

2

.          .          .

> b. We may examine any insured under oath, while not in the
> presence of any other insured and at such times as may be
> reasonably required, about any matter relating to this insurance or
> the claim, including an insured's books and records. In the event of
> an examination, an insured's answers must be signed.

*Id.* at p. 125 (the "Duties in the Event of Loss Provision").

Following water damage to its inventory of fabrics on or about January 21, 2023, Plaintiff submitted a claim to Defendant under the Policy (the "Claim"). (ECF No. 3 ¶ 9; Def. Fraud Report, ECF No. 74-24 at p. 2.) The water damage resulted from a bathroom sink faucet having been left on over a weekend. (ECF No. 74-1 at p. 1; ECF No. 88 at p. 3.)

### A. Invoices Submitted in Support of the Claim

After the loss, Plaintiff retained public adjuster, Neal Charkatz of Goodman, Gable & Gould ("GGG"), and inventory specialist, Orville Curry. (ECF No. 74-1 at p. 1; ECF No. 88 at p. 10.) Defendant retained the services of Kenneth Rizer of Nardone & Company to inspect the loss. (Rizer Report, ECF No. 74-15 at p. 2.) On February 2, 2023, Curry supplied a list he and Miller created of unpriced inventory, noting that Miller was "currently trying to secure quotes for replacement for the fabrics." (Feb. 2, 2023 Email, ECF No. 74-5.) On February 6, 2023, Miller emailed another list of fabrics to John Drakopoulos of Tip Top Fabrics. (Feb. 6, 2023 Email, ECF No. 74-6.) Drakopoulos completed an estimate (Estimate # 29, ECF No. 74-7), which he later converted to an invoice at Miller's request. (Drakopoulos Dep. Tr., ECF No. 74-8 at 58:14–17.) Particularly at issue, Drakopoulos prepared two documents—Invoice 60153, dated January 14, 2023, and Invoice 60269, dated January 21, 2023 (both before the date of loss) (the "Invoices"), totaling $236,616.75. (Invoices, ECF No. 74-13; Drakopoulos Dep. Tr., ECF No. 88-5 at 49:20–

50:4.)  Based on the Invoices, Curry recalculated the loss inventory cost as $309,870.19.  (Email of Mar. 30, 2023, ECF No. 74-14.)

Facts pertaining to the Invoices are heavily disputed.  Defendant urges the Invoices were "bogus" and created to inflate Plaintiff's claim for the damaged fabrics.  (ECF No. 74-1 at p. 8.) To support its position, Defendant identifies, *inter alia*, Curry's testimony that Miller told him the Invoices were, in fact, invoices as opposed to estimates, *see* Curry Dep. Tr., ECF No. 74-21 at 99:10–100:14; Drakopoulos's communication with Defendant's investigator that the Invoices were never paid, picked up, or delivered, *see* Cotroneo Report, ECF No. 74-22 at pp. 3–4; Drakopoulos's testimony that Miller directed him to convert the original estimate to an invoice, *see* Drakopoulos Dep. Tr., ECF No. 74-8 at 58:14–17; and testimony of defense expert, Matthew Smith, on the Invoices, *see* Smith Dep. Tr., ECF No. 92-22.

 For its part, Plaintiff points to, *inter alia*, Miller's testimony explaining the discrepancy—that the Invoices were unexecuted and intended to capture the replacement value for the lost and damaged fabrics, *see* Miller Dep. Tr., ECF No. 88-2 at 44:15–21; 47:4–7, 54:11–21; Drakopoulos's testimony that the Invoices were "to show the replacement cost of the fabrics of a loss on behalf of Mr. Miller" and explaining why he produced same in the form of the Invoices, *see* Drakopoulos Dep. Tr., ECF No. 88-5 at 42:4–14, 49:3–50:19, 69:5–13; and Plaintiff's expert report of Brian Goodman of Goodman & Arnold, which states that the Invoices "were prepared in a proper manner to set the replacement cost of the fabrics as the proper measure of indemnity in this Replacement Cost policy," *see* Goodman Report, ECF No. 88-8 at p. 11.[2]

---

[2] The Goodman Report is signed, but unsworn; and Plaintiff did not submit a declaration or affidavit "made 'under penalty of perjury' from the expert[] attesting that [he] 'would testify to the matters set forth in [his] . . . report[].'" *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539 (4th Cir. 2015); *see Savage v. Fed. Home Loan Mortg. Corp.*, No. CV JKB-19-2482, 2021 WL 5330345, at *7 (D. Md. Nov. 16, 2021) (citing cases and explaining that "courts in this District continue to decline to consider unsworn expert reports at the summary judgment stage").  To be clear, the court's reference to the Goodman Report is not based on the court's evaluation of its

**B.  Defendant's Investigation of the Claim**

On May 9, 2023, Defendant's counsel, citing the Duties in the Event of Loss Provision, sent Miller a letter scheduling an Examination Under Oath ("EUO"), and requesting production of 59 (at times redundant) categories of documents, including, among other things, lease agreements; real estate records; maintenance records; four years of Plaintiff's bank account and credit card statements; four years of Plaintiff's cellphone bills; copies of driver's licenses, photo identification cards, voter registration cards, vehicle registrations, and proof of health insurance for all employees from 2018 to the present; and three years of state and federal tax returns. (Correspondence of May 9, 2023, ECF No. 3-3.)  Plaintiff produced documents in response to those requests on August 23, 2023, but limited production to the period of approximately January 1, 2021 (two years before the loss), to the date of production.  (Correspondence of Aug. 23, 2023, ECF No. 3-4.)

On September 12, 2023, Defendant conducted its EUO of Miller.  (Miller EUO Tr., ECF Nos. 74-28, 88-12.)  Plaintiff's counsel instructed Miller not to answer one question during his EUO regarding whether he retained Charkatz (of GGG) "on a 10 percent contingency."  *Id.* at 31:10–33:8. Following Miller's EUO, Defendant's counsel requested production of additional categories of documents.  (Correspondence of Sep. 12, 2023, ECF No. 3-5.)  Plaintiff produced additional documents in response.  (Correspondence of Sep. 28, 2023, ECF No. 3-6.)  Thereafter, Defendant's counsel corresponded with Plaintiff's counsel, requesting additional documents and noting "a complete failure to produce some of the requested records" and "other records . . . are so heavily redacted that they amount to a failure of production."  (Oct. 11, 2023 Correspondence, ECF No. 3-7.)  Plaintiff's counsel responded with additional production and additional documents

---

credibility or weight, but rather for purposes of identifying evidence Plaintiff intends to offer that bears on material facts in dispute.

would be forthcoming upon explanation "as to the relevance and materiality of those requests." (Oct. 26, 2023 Correspondence, ECF No. 3-8.)  On November 1, 2023, Defendant requested yet additional documents and unredacted versions of previously produced redacted documents. (Correspondence of Nov. 1, 2023, ECF No. 3-9.)  In response, Plaintiff produced additional documents and detailed the rationale for redactions.  (Correspondence of Jan. 3, 2024, ECF No. 3-10.)

As with the Invoices, whether Plaintiff complied with Defendants production requests is heavily disputed.  Defendant's position is that Plaintiff has failed to produce "a number of documents that clearly exist," including *inter alia*, predominantly email and text message correspondence between Miller and fabric suppliers, and Miller and his public adjuster's firm. (ECF No. 74-1 at pp. 20–21.)  Plaintiff's position is that it has complied with Defendant's material requests, submitting thousands of documents; that Defendant "has sought to unreasonably and unnecessarily hammer [Plaintiff] and unreasonably expand this claim by repeatedly asking for more documents upon more documents, simply to then allege non-cooperation"; and that Defendant seeks documents that do not exist.  (ECF No. 88 at pp. 23–25.)

On January 19, 2024, Defendant denied Plaintiff's Claim, stating:

> Michael's has failed to produce documents requested by Donegal in conjunction with its investigation of the claim. This includes a request that redacted documents, including, but not limited to, the April 17, 2023 e-mail from Tip Top Fabrics to Mr. Miller be produced in an unredacted state. The failure to produce requested documents is a breach of the insurance contract. . . . The redaction of the April 17, 2023 e-mail and other documents on the grounds that your firm's staff members affixed their names and e-mail addresses to the redacted areas fails to explain why the unredacted document cannot simply be reprinted by Mr. Miller and produced in an unredacted state.
>
> Donegal must also deny coverage for the claimed water damage to Michael's business personal property under Donegal Policy No.

6

> BSD8959692 due to Michael's violation of the Businessowners
> Common Policy Conditions rendering the policy void in the event
> of "Concealment, Misrepresentation or Fraud" in the presentation of
> a claim.

(Decision Letter, ECF No. 3-12 at p. 1) (citations omitted)).

### C. Procedural Background

On May 6, 2024, Plaintiff filed suit against Defendant in the Circuit Court for Baltimore County. On June 3, 2024, Defendant removed the action to this court. (ECF No. 1.) Plaintiff's Complaint asserts claims of Breach of Contract (Count I) and Bad Faith in violation of Section 3-1701 of the Courts and Judicial Proceedings Article of the Maryland Code (Count II). Following a contentious discovery period, Defendant's Motion for summary judgment is now before the court. (ECF No. 74.) Plaintiff opposes the Motion. (ECF No. 88.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.    ANALYSIS

Defendant seeks summary judgment on all claims.  Plaintiff opposes the Motion on the basis that genuine disputes of material fact exist.[3]

As discussed in its previous opinion at ECF No. 104, "Maryland law is well settled that 'the interpretation of an insurance policy is governed by the same principles generally applicable

---

[3] Plaintiff asserts as follows: "Michael's incorporates ECF Nos. 24, 45 and 68 into this Response in Opposition to Donegal's Motion for Summary Judgment and respectfully requests that judgment be entered in favor of Michael's against Donegal."  (ECF No. 88 at p. 1.)  The court declines to consider Plaintiff's briefings as requesting summary judgment where it has not affirmatively sought same in the operative briefs before the court.  Relatedly, while the court appreciates the general reason that Plaintiff incorporates/adopts its previous briefing, the court has already ruled on those papers; and the court declines to review Plaintiff's previous filings to see how, if at all, they support entry of summary judgment for Plaintiff.  Further, a party may not avoid the page limitations set by the Local Rules by merely incorporating, in full, previously filed papers.

to the construction of other contracts.'"[4] *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 50–51 (D. Md. 2020) (quoting *Mitchell v. AARP*, 140 Md. App. 102, 116 (2001)); *see Matter of Featherfall Restoration LLC*, 261 Md. App. 105, 129–30, *cert. granted,* 487 Md. 264 (2024) ("Generally, Maryland courts 'interpret the language of an insurance policy with the same principles and rules of construction that we use to interpret other contracts.'" (quoting *Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 480 (2015)).

### A. Voiding the Policy by Concealment, Misrepresentation, or Fraud

Defendant first contends it is entitled to summary judgment because Plaintiff "voided" its coverage under the Policy by submitting the two "bogus" Invoices from Tip Top Fabrics "in order to inflate Michael's claim for damaged fabrics." (ECF No. 74-1 at pp. 8–15, 16–19.) As noted above, the Concealment, Misrepresentation, or Fraud Provision provides that the Policy is rendered void if the insured "intentionally conceal[s] or misrepresent[s] a material fact" concerning the Policy, the property covered thereby, or a claim at issue under same.[5] (Policy, ECF No. 74-26 at p. 133.)

"Maryland courts require that litigants establish a claim or defense of fraud by clear and convincing evidence." *Simms v. Mut. Benefit Ins. Co.*, 137 F. App'x 594, 599 (4th Cir. 2005) (quoting *Loyola Fed. Sav. & Loan Ass'n v. Trenchcraft, Inc.,* 17 Md. App. 646, 648 (1973)). A party can establish fraud or intentional misrepresentation upon showing: "(1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual

---

[4] "A federal court sitting in diversity is required to apply the substantive law of the forum state . . . ." *Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)).

[5] As Defendant notes, Maryland law provides that a person engages in a fraudulent insurance act where he or she "present[s] or cause[s] to be presented to an insurer documentation or an oral or written statement made in support of a claim, . . . with knowledge that the documentation or statement contains false or misleading information about a matter material to the claim." MD. CODE ANN., INS. § 27-403(2).

knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby."[6] *Id.* (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982)); *see Harris v. Keystone Ins. Co.*, No. CIV. SAG-13-2839, 2015 WL 1062032, at *3 (D. Md. Mar. 10, 2015) (same). The Fourth Circuit has noted that the elements of fraud, intentional misrepresentation, and intentional concealment under Maryland law are "essentially the same," with some minimal distinctions. *Simms*, 137 F. App'x at 600–601 (citing cases and noting "[t]he important similarity among these various terms—'fraud,' 'intentional concealment,' 'intentional misrepresentation,' and 'false statements,'—is the scienter requirement, and scienter must be proven by clear and convincing evidence").

The general requirement "to prove detrimental reliance is dropped for insurers who seek to establish that an insured has submitted a fraudulent claim." *Id.* at 599–600 (citing *Tru–Fit Clothes, Inc. v. Underwriters at Lloyd's London*, 151 F. Supp. 136, 140 (D. Md. 1957)). That notwithstanding, "proof of the insurer's intent to deceive remains a vital element in all claims of fraud." *Id.* (citing *First Union Nat. Bank v. Steele Software Systems, Corp.,* 154 Md. App. 97, 147 (2003)). Indeed, an "intent to defraud is not to be presumed and . . . all reasonable allowance shall be made for lack of knowledge, or sound judgment, or for honest mistake on the part of the insured." *Mendez v. Nationwide Prop. & Cas. Ins. Co.*, 910 F. Supp. 2d 784, 791 (D. Md. 2012) (citation modified) (quoting *Great Sw. Fire Ins. Co. v. S.M.A., Inc.*, 59 Md. App. 136, 142–43 (1984)). While it is generally the case that whether a representation is false "is a question of fact

---

[6] There are additional factors—"(4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation"; however, application of same "would lead to an absurd result" when "establishing fraud in the context of an insurance contract." *Simms v. Mut. Benefit Ins. Co.*, 137 F. App'x 594, 599 (4th Cir. 2005)

for the jury," where "the evidence is 'clear and convincing or uncontradicted,' a court may rule as a matter of law." *Phillips v. Allstate Indemn. Co.*, 156 Md. App. 729, 747 (2004).

Here, it is plain that the material facts surrounding Plaintiff's submission of the purportedly fraudulent Invoices are highly disputed. As discussed above, Defendant offers the evidence it contends supports its position that Miller violated the Concealment, Misrepresentation, or Fraud Provision by submitting purportedly fraudulent invoices—the Invoices themselves, the prior version of the Invoices (the estimate and pre-finalized versions of the submitted Invoices), Cotroneo's report discussing Drakopoulos's creation of the Invoices, Miller's testimony at his EUO, and Smith's expected expert testimony. (ECF No. 74-1 at pp. 8–15; ECF No. 92 at pp. 21–22.) Plaintiff, in turn, offers evidence to support its assertion that the Invoices were unexecuted invoices drafted to depict replacement value of the damaged fabric, including, most notably, testimony of Miller, Charkatz, and Drakopoulous, as well as Goodman's expert report.[7] (ECF No. 88 at pp. 8–17.) *Cf. Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. 2024) (explaining that the nonmovants' "self-serving declarations" could defeat summary judgment); *Evans v. Schultz*, No. CV ELH-22-3073, 2024 WL 3568569, at *6 (D. Md. July 29, 2024) (recognizing that "[t]estimony that is based on personal knowledge or firsthand experience can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving").

"Questions of fraud are fact-specific and generally involve dramatically opposite positions of the parties on the interpretation of the factual issues as applied to the law." *Oliff-Michael v. Mut. Benefit Ins. Co.*, 262 F. Supp. 2d 602, 604 (D. Md. 2003) (citation omitted). "[A]t the summary judgment stage the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v.*

---

[7] As discussed above, the court does not consider the substance of the Goodman Report, but merely notes its existence and that it opines on material facts in dispute.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The court therefore cannot weigh the evidence or make credibility determinations."  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 352 (4th Cir. 2007)).  Accordingly, here, where resolution of the material facts in dispute requires assessments of credibility and weighing of evidence—functions reserved for the factfinder— summary judgment is not appropriate.  *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 264 (D. Md. 2023) (explaining "[w]here there is conflicting evidence, . . . summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility") (quoting *Anderson*, 477 U.S. at 249).

This principle has been repeatedly reiterated by this court in contexts such as this.  *See, e.g.*, *Harris*, 2015 WL 1062032, at *4 (holding that, in determining whether the insured had an intent to defraud, "ascertaining [the insured's] state of mind is a function of the jury, not the court"); *Mendez*, 910 F. Supp. 2d at 792–93 (holding that whether an insured committed false swearing in submitting his claims "requires ascertaining his state of mind, determining the credibility of witnesses, weighing of the evidence, and drawing inferences from the facts presented," and were functions for "the jury, not the judge"); *Oliff-Michael*, 262 F. Supp. 2d at 604 (holding that the question of whether an insured "willfully, knowingly, and intentionally reported false information . . . in the course of [the insurer's] investigation," and thus rendering the policy void, was fact-specific and required determinations of credibility not proper for summary judgment).  *See also Tru-Fit Clothes, Inc. v. Underwriters at Lloyd's London*, 151 F. Supp. 136, 139 (D. Md. 1957) ("Intent to defraud is not to be presumed and the trier of fact— that is, the jury—should make all reasonable allowance for lack of knowledge, or sound judgment, or for honest mistake on the part of the insured . . . .").

Accordingly, the court will deny Defendant's Motion to the extent it seeks summary judgment on the basis that Plaintiff voided the Policy by violating the Concealment, Misrepresentation, or Fraud Provision.

## B. Doctrine of Uberrimae Fidei

Curiously, Defendant cites the doctrine of uberrimae fidei in the context of marine insurance contracts. (ECF No. 74-1 at pp. 15–16.) Defendant's Motion contains two paragraphs that appear to have been directly taken, without attribution like quotation marks or notations, from the Honorable Catherine C. Blake's opinion in *North American Specialty Insurance Co. v. Savage*, 977 F. Supp. 725 (D. Md. 1997). *Id.* Beyond its heading, Defendant offers no argument as to the doctrine's applicability here. Where Defendant has not advanced any argument, the court declines to undertake the task *sua sponte*.

## C. Breach of the Policy

Defendant also contends it is entitled to summary judgment because, during its investigation of the Claim, Miller failed to produce the requested unredacted documents and refused to answer a question during his EUO.[8] (ECF No. 74-1 at pp. 19–24.) As set forth above, the Duties in the Event of Loss Provision requires the insured to "[c]ooperate with [the insured] in the investigation or settlement of the claim" and submit for an EUO. (Policy, ECF No. 74-26 at p. 125.)

"Maryland cases that address breaches arising out of a failure to cooperate are generally premised upon a cooperation clause in a policy." *Phillips*, 156 Md. App. at 743 n.2 (first citing *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 108 (2001); then citing *Roussos*

---

[8] Although it is unclear, it appears that Defendant also advances arguments regarding Plaintiff's production during discovery in this action. To the extent it does so (or intended to do so), the court notes that the parties' discovery efforts are not material to Defendant's arguments that Plaintiff breached the Duties in the Event of Loss Provision where Defendant's investigation and denial of the Claim all preceded any discovery efforts in this action.

*v. Allstate Ins. Co.,* 104 Md. App. 80, 84 (1995)).  "Provisions requiring the submission of information upon request are categorized as cooperation clauses," *see Snyder v. Chester Cnty. Mut. Ins. Co.*, 264 F. Supp. 2d 332, 337 (D. Md. 2003), including "[r]ecords-request provisions" and "requirements that insureds submit to examinations under oath."  *John v. Essentia Ins. Co.*, No. CV 23-310-PJM, 2024 WL 2978232, at *7 (D. Md. June 13, 2024) (first citing *Snyder*, 264 F. Supp. 2d at 337; then citing *Phillips*, 156 Md. App. at 742).

"A cooperation clause may be either an express condition or a covenant."  *Snyder*, 264 F. Supp. 2d at 337 (citing *Hartford Fire Insurance Company v. Himelfarb,* 355 Md. 671, 680 (1999)).  "'Strict compliance with an express condition is required to maintain the insurer's payment obligation' whereas '[m]ere substantial compliance with a covenant is sufficient.'"  *Epp v. State Farm Fire & Cas. Co.*, No. CV 23-0595-BAH, 2025 WL 360488, at *8 (D. Md. Jan. 30, 2025) (alteration in original) (quoting *Snyder*, 264 F. Supp. 2d at 337).  "Given the potentially severe implications of the imposition of a condition precedent, courts have been careful to distinguish a condition precedent from a covenant."  *B & P Enters. v. Overland Equip. Co.*, 133 Md. App. 583, 607 (2000) (citing *See Himelfarb,* 355 Md. at 681).  Indeed, "[i]t is well known that insurers 'frequently assert noncompliance with contractual duties as grounds to disclaim liability.'"  *Essentia*, 2024 WL 2978232, at *7 (quoting *Snyder*, 264 F. Supp. 2d at 337).

Leaving aside whether the Duties in the Event of Loss Provision is a condition precedent under the Policy,[9] there are issues of relevance and materiality of the information sought, as well

---

[9] "Provisions in insurance policies are to be interpreted like those of any other contract."  *Hartford Fire Ins. Co. v. Himelfarb*, 355 Md. 671, 679 (1999) (first citing *Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 5 (1992); then citing *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 388 (1985)).  "A condition precedent in a contract is a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises."  *Gebhardt & Smith LLP v. Maryland Port Admin.*, 188 Md. App. 532, 567 (2009) (quoting *All State Home Mortg., Inc. v. Daniel*, 187 Md. App. 166, 182 (2009)).  Accordingly, where a condition precedent is not satisfied, "the corresponding contractual duty of the party whose performance was conditioned on it," generally, "does not arise."  *B & P Enters. v. Overland Equip. Co.*, 133 Md. App. 583, 606–07 (2000).  Maryland law guides the court's analysis of whether a cooperation clause is a condition precedent or a covenant.  *See Epp v. State*

as the related ultimate determination of compliance, that are properly for the factfinder.  Plaintiff contends that, in the course of Defendant's investigation, it produced documents and answered questions that were material to Defendant's investigation.

"To request financial documents, an insurer need only believe in good faith that there is a possibility of fraud." *Snyder*, 264 F. Supp. 2d at 338.  Further, in the context of an EUO, "an insurer is 'entitled to conduct a searching examination, though all questions should be confined to matters relevant and material to the loss.'" *Phillips*, 156 Md. App. at 743 (quoting 13 Couch on Insurance § 196:11, p. 196–20 (3d ed. 2003)).  Indeed, "[a]n insured is not required to answer immaterial questions," where materiality is determined "in the context of the insured's claim and the insurer's investigation." *Id.* (citing 13 Couch on Insurance § 196:11, p. 196–21 (3d ed. 2003)).

While "the materiality of an insurer's inquiry into an insured's personal finances and the sufficiency of an insured's efforts to respond to such inquiries" may generally "produce genuine disputes of material fact that a factfinder would be charged with deciding after a trial," summary judgment may still be proper where there is "'no doubt [that] an insured has failed to comply with his or her obligations to cooperate with his or her insurer." *Essentia*, 2024 WL 2978232, at *9.

The parties' briefings are far from models of clarity on these issues.  What is clear, however, is that both the materiality of the requested information and Plaintiff's compliance are hotly contested, with each party offering admissible evidence to support its position.  For its part, Plaintiff produced thousands of documents to Defendant, including, seemingly, the requisite inventories of the damaged property (the court acknowledges the underlying veracity of same is

---

*Farm Fire & Cas. Co.*, No. CV 23-0595-BAH, 2025 WL 360488, at *8 n.9 (D. Md. Jan. 30, 2025) (discussing *Himelfarb* and the factors to consider "to determine whether the language of an insurance contract created a condition precedent or a covenant").  The parties here appear to dispute whether the Duties in the Event of Loss Provision is a condition precedent.  Defendant asserts it is; Plaintiff asserts it is not.  Neither, however, advances argument to support its position.  (ECF No. 74-1 at p. 23; ECF No. 88 at p. 23.)  As stated above, where the parties have not advanced argument as to a material consideration, the court declines to undertake the task *sua sponte*.

indeed challenged), and permitted inspection of the loss and all financial documents requested. *See* Policy, ECF No. 74-26 at p. 125. Plaintiff further commends to the court's attention Defendant's investigation and repeated requests for broad-ranging documents, as well as a lengthy EUO. Defendant, in turn, urges the court to look to its good faith belief of the possibility of fraud and contends that its requests all related thereto.[10]

Materiality of documents not produced (to the extent they even exist) and the unanswered EUO question is properly for the factfinder. This is not a circumstance upon which there is "no doubt" that Plaintiff failed to produce materials that it was obliged under the Policy. *See Essentia*, 2024 WL 2978232, at *9, *supra*. Accordingly, the court will deny Defendant's Motion on this basis.

### D. Defendant's Bad Faith Denial of Plaintiff's Claim

Finally, Defendant seeks summary judgment as to Count II because Plaintiff has no evidence that Defendant acted in bad faith in denying Plaintiff's claim.[11]

Under Maryland law, there is no independent action in tort against insurers for bad faith failure to pay a claim. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. CV ELH-16-3431, 2018 WL 1471682, at *10 (quoting *Johnson v. Kemper Inc. Co*, 74 Md. App. 243, 248 (1988)). Maryland law does, however, "provide a statutory cause of action for failure to act in good faith in denying insurance coverage, under [MD. CODE. ANN., CTS. & JUD. PROC. § 3-1701]

---

[10] Defendant makes the cursory assertion that "similar violations" occurred throughout the EUO, citing to a number of pages in the transcript. (ECF No. 74-1 at p. 22.) Defendant did not provide many of the pages cited. In any event, the court reviewed the full transcript provided by Plaintiff and the other cited portions do not appear to show any additional questions in response to which Plaintiff's counsel advised Miller not to answer. To be sure, there were instructions for Miller not to, for instance, look at his phone and instead to testify from memory, or to testify to his own knowledge and not to guess, but the court identifies no additional questions for information to which Defendant did not receive an answer. *See* Miller EUO Tr., ECF No. 88-12 at 35, 40-42, 57, 93, 101–104, 106–108, and 130–31.

[11] Defendant initially moves for Count II to be "dismissed" in his Motion before later seeking judgment "as a matter of law" in its reply. (ECF No. 74-1 at p. 25; ECF No. 92 at p. 10.) Given the argument is raised on summary judgment, the court construes Defendant to seek summary judgment on Count II.

and its companion, [MD. CODE. ANN., INS. § 27-1001]." *Schwartz v. Travelers Prop. Cas. Ins. Co.*, No. CV SAG-20-1919, 2021 WL 1060289, at *3 (D. Md. Mar. 19, 2021). Indeed, "[p]ursuant to Maryland statutory law, an insured may bring a civil action against an insurer under a property and casualty insurance policy" where the insured alleges, *inter alia*, "that the insurer failed to act in good faith." *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 415 (D. Md. 2014) (citing MD. CODE ANN., CTS. & JUD. PROC. § 3-1701(d)).

In a civil action, section 3-1701(d) applies as follows:

> (1)(i) To determine the coverage that exists under the insurer's insurance policy; or
> (ii) To determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss;
> (2) That alleges that the insurer failed to act in good faith; and
> (3) That seeks, in addition to the actual damages under the policy, to recover expenses and litigation costs, and interest on those expenses or costs

MD. CODE. ANN., CTS. & JUD. PROC. § 3-1701(d). "Good faith" refers to "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *Id.* §§ 3-1701(a)(5), 27-1001(a). "The statutes authorize a cause of action against an insurer that fails to act in good faith in denying coverage, and authorize the insured to recover 'actual damages,' up to the limits of the applicable insurance policy, along with attorneys' fees, expenses, other litigation costs, and interest." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. CV ELH-16-3431, 2018 WL 1471682, at *10 (D. Md. Mar. 23, 2018) (citing MD. CODE. ANN., CTS. & JUD. PROC. § 3-1701(e)). The provision "applies only to first-party claims under property and casualty insurance policies or individual disability insurance policies issued, sold, or delivered in the State." *Id.* § 3-1701(b).

17

As an initial matter, to the extent Defendant seeks summary judgment on the basis that Plaintiff's bad faith claim is not recognized under Maryland law, the court is not persuaded.[12]  As the Honorable Ellen L. Hollander of this court has explained:

> Defendant argues that Count 2 is subject to dismissal because Maryland does not recognize a claim against an insurer for bad faith refusal to pay a claim. Although legally correct as a general proposition, the contention is unavailing here. Plaintiff expressly relies on C.J. § 3-1701 as the basis for the claim in Count 2. Moreover, CPG asserts that defendant had a duty "to investigate in good faith" and "breached its duty."
>
> To be sure, the title of the claim refers to "bad faith" and not "good faith." But, the title of the count does not control. It is the content that matters. *See All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F.Supp.3d 409, 420 (D. Md. 2014). The content makes plain that plaintiff asserts a statutory claim against the insurer, charging lack of good faith. Defendant's contention that Count 2 is subject to dismissal because it is a claim for bad faith refusal to pay is specious.

*Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. CV ELH-16-3431, 2018 WL 1471682, at *10 (D. Md. Mar. 23, 2018) (record citations omitted).  The same reasoning is persuasive here.  Plaintiff's Complaint expressly states Count II is for violation of § 3-1701 of the Courts and Judicial Proceedings Article.

Defendant's remaining challenge appears to be that no evidence supports Plaintiff's claim of lack of good faith.  Courts assess an insurer's good faith based on the totality of the circumstances, including the following factors: "(1) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (2) the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] (3) the insurer's diligence and thoroughness in investigating the facts specifically

---

[12] Defendant's reference to *King v. United States Auto. Ass'n*, No. CV TDC-21-0515, 2023 WL 2529035 (D. Md. Mar. 14, 2023), which concerns a separate statutory provision— MD. CODE. ANN., INS. § 27-303—is, without more, not persuasive.

pertinent to coverage." *Cincinnati Ins. Co. v. Fish*, 587 F. Supp. 3d 329, 340 (D. Md. 2022) (quoting *Schwartz v. Travelers Prop. Cas. Ins. Co.*, No. SAG-20-1919, 2021 WL 1060289 at *3 (D. Md. Mar. 19, 2021)). "To assess those factors, courts consider 'the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available.'" *Schwartz*, 2021 WL 1060289, at *3 (quoting *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014)). "[T]he determination as to good faith focuses on the time at which the insurer's decision was made, not at a later point in subsequent litigation when all involved have the benefit of additional evidence."[13] *All Class Const.*, 3 F. Supp. 3d at 416 (citing *Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 636 F. Supp. 2d 481, 486–87 (D. Md. 2009)).

There remain genuine disputes of material fact as to Defendant's denial of the Claim and whether it was done in good faith. Defendant offers evidence to support its assertion of good faith— that it conducted its investigation of the Claim in good faith, that it made initial payments of more than $100,000, and only denied the claim after receiving what it contends were Plaintiff's fraudulent invoices on April 24, 2023, after receiving the Invoices and speaking with Drakopolous about same. (ECF No. 74-1 at pp. 28–30; Def. Fraud Report, ECF No. 74-24; Cotroneo Report, ECF No. 74-22 at pp. 3–4.) Plaintiff, too, offers evidence to support its position—Defendant's repeated request for a multitude of documents (many of which, it contends, are irrelevant) in the course of the investigation, *see* Correspondence of May 9, 2023, ECF No. 3-3; Sep. 12, 2023, ECF No. 3-5; Oct. 11, 2023, ECF No. 3-7; and Nov. 1, 2023, ECF No. 3-9, and Plaintiff's repeated efforts to satisfy same, as well as the Goodman Report opining that Defendant "did not have a

---

[13] Plaintiff appears to mistake this point, arguing in its opposition that Defendant's bad faith denial of its claim is evidenced by its conduct in litigation. Such conduct is not dispositive on the determination of Count II. (ECF No. 88 at pp. 25–26.)

reasonable basis to deny the claim and did not adhere to its duty of good faith to the insured, []
Plaintiff, in assessing [its] claim." (Goodman Report, ECF No. 88-8 at p. 10.)

While Defendant's argument may raise doubts about Plaintiff's likelihood of success on
the merits, the proffered admissible, competent evidence demonstrates the existence of disputes of
material fact as to the above-recited totality of the circumstances factors to be considered. The
ultimate determination of these factors requires weighing evidence and considerations of
credibility. As explained, such tasks fall within the province of the factfinder and are inappropriate
for resolution by summary judgment. Accordingly, the court will deny the Motion as to Count
II.[14]

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 74) will be denied.

September 11, 2025                                       /S/

_____
Julie R. Rubin
United States District Judge

---

[14] Accordingly, the court will also deny Defendant's request for Rule 11 sanctions, which was, in any event, improperly
raised in its reply brief. FED. R. CIV. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court
determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm,
or party that violated the rule or is responsible for the violation. . . . A motion for sanctions must be made separately
from any other motion and must describe the specific conduct that allegedly violates Rule 11(b) . The motion must be
served under Rule 5 , but it must not be filed or be presented to the court if the challenged paper, claim, defense,
contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the
court sets.").